IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRANCE L. EDMONDS,<br>Plaintiff, | )<br>)<br>) | C.A. No. 06-144 Erie |
| v. | )<br>)<br>) | **District Judge McLaughlin**<br>**Magistrate Judge Baxter** |
| SUPERINTENDENT RAYMOND SOBINA,<br>Defendant. | )<br>) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Summary Judgment [Document # 38] be granted.

### II.    REPORT

#### A.     Relevant Procedural and Factual History

Plaintiff Terrance L. Edmonds, a prisoner presently incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"), brings this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983.  Named as Defendants are:  Raymond Sobina, Superintendent at SCI-Forest ("Sobina"); Jeffery Beard, Secretary of the Pennsylvania Department of Corrections ("Beard"); Captain Riskus, a Corrections Officer at SCI-Forest ("Riskus"); Lieutenant Steele, a Corrections Officer at SCI-Forest ("Steele"); Corrections Officer McGeever ("McGeever"); Corrections Officer Miorelli ("Miorelli"); and Kerri Cross, Hearing Examiner at SCI-Forest ("Cross").

Plaintiff claims that his rights under the First, Fourth, Eighth, and Fourteenth Amendments were violated by Defendants, as follows:  (i) Plaintiff's property, consisting primarily of legal materials related to the Uniform Commercial Code ("UCC"), were taken in violation of his Fourth Amendment rights, as well as his due process rights under the Fourteenth Amendment, and his right to access the courts under the First Amendment (Document # 8,

Complaint, at p. 8, ¶ 19); (ii) Plaintiff was found guilty of a misconduct for possession of UCC-related materials, and was placed in SCI-Forest's Restricted Housing Unit ("RHU"), in violation of his due process rights under the Fourteenth Amendment (Id. at ¶¶ 18-19); and (iii) Plaintiff's placement in the RHU for possession of the UCC-related materials violated his Eighth Amendment rights.

In particular, Plaintiff alleges that, on December 7, 2005, Defendants McGeever and Miorelli performed an investigative search of Plaintiff's cell and found UCC-related materials. (Id. at p. 6, ¶ 11). Defendant McGeever then called Defendant Steele to Plaintiff's cell to have him witness the presence of the UCC-related materials and to have Plaintiff escorted to the RHU, pending a disciplinary hearing. (Id. at p. 7, ¶ 13). Defendant Riskus is alleged to have ordered the search of Plaintiff's cell. (Id. at p. 2, Section IV.C.4). As a result of the search, Plaintiff was issued a misconduct for possession of contraband. (Document # 38, Exhibit D). On December 11, 2005, Defendant Cross held a disciplinary hearing and found Plaintiff guilty of the misconduct "without evidence being presented," and sanctioned him to 90 days of disciplinary custody in the RHU. (Document # 8, Complaint, at p. 7, ¶ 14). Plaintiff claims that Defendant Sobina "knew the actions of his officers violating [sic] plaintiff's due process rights, human rights, as well as constitutional rights – but allowed the investigation to proceed, by following the sanctioning of Jeffrey Beard." (Id. at p. 2, Section IV.C.5). Plaintiff alleges further that Defendant Beard is responsible for placing a "UCC sanction on [Plaintiff] and all the inmates at [SCI Forest]." (Id. at Section IV.C.6).

As relief for his claims, Plaintiff seeks monetary damages, declaratory relief, and injunctive relief, in the form of an order "to stop imposing a sanction on uniform commercial codes from coming into SCI Forest and to also return plaintiff's [UCC] information back to him...." (Id. at p. 10, ¶¶ 21-24].

On June 15, 2007, Defendants filed a motion for summary judgment [Document # 38], arguing that Plaintiff's claims fail as a matter of law. Plaintiff has since filed a brief in response

2

to Defendants' motion, essentially restating the allegations of his Complaint. [Document # 44]. This matter is now ripe for consideration.

### B.     Standards of Review
#### 1.     Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine as to any material fact and that the moving party is entitled to a judgment as matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(non-movant must present affirmative evidence-more than a scintilla but less than a preponderance-to support his claims). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. Bailey v. United Airlines, 279 F.3d 194, 198 (3d Cir. 2002) quoting Battaglia v. McKendry, 233 F.3d 720, 722 (3d Cir. 2000). Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements, rather, "the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." In re Ikon Office Solutions, 277 F.3d 658, 666 (3d Cir. 2002).

On a motion for summary judgment, the district court may not weigh the credibility or weight of the evidence, rather, it may only determine the existence of a triable issue of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 520-521 (1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. v. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C. Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complaint. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63,65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### C. Discussion
#### 1. Fourth Amendment Claim

Plaintiff claims that the confiscation of his UCC-related legal materials violated his Fourth Amendment right to be free from illegal search and seizure. However, the United States Supreme Court has held that the Fourth Amendment has no applicability to prison cells. Hudson v. Palmer, 468 U.S. 517, 536 (1984). Thus, Plaintiff is unable to maintain a claim based upon

the Fourth Amendment, and the same should be dismissed.

## 2. Fourteenth Amendment Due Process Claims

Plaintiff claims that the confiscation of his UCC-related materials violated his due process rights. However, the United States Supreme Court has held that the "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available" Hudson v. Palmer, 468 U.S. 517, 533 (1984). The Supreme Court noted that an inmate grievance procedure provides a meaningful post-deprivation remedy. 468 U.S. at 536, n.9. See also Austin v. Lehman, 893 F.Supp. 448, 454 (E.D.Pa. 1995)(the internal grievance procedure provided by the Pennsylvania Department of Corrections ... constitute[s] an adequate post-deprivation remedy for any deprivation"). Furthermore, a plaintiff's failure to avail himself of such a remedy does not affect its adequacy as a post-deprivation remedy. Ramos v. Vaughn, 1995 WL 386573 at *3 (E.D.Pa. 1995), aff'd, 85 F.3d 612 (3d Cir. 1996)(table). Thus, Plaintiff's due process claim based on the confiscation of his UCC-related materials cannot stand, as he has available to him an adequate post-deprivation remedy through which he may seek redress.

Plaintiff also argues that his placement in the RHU for a period of 90 days after being found guilty of possessing contraband "without evidence being presented" violated his constitutional right to due process. Initially, the Court notes that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolfe v. McDonnell, 418 U.S. 539, 556 (1974). In the context of institutional misconduct hearings, "due process requires only that there 'be some evidence' supporting a disciplinary decision... and it is the hearing examiner's providence, and not this court's, to gauge the credibility of evidence and witnesses at a misconduct hearing." Rauso v. Vaughn, 2000 WL 873285 at * 8 (E.D.Pa. June 26, 2000), citing Massachusetts Correctional Inst.

v. Hill, 472 U.S. 445, 455-56 (1985).

Here, Plaintiff does not dispute that he was found in possession of UCC-related materials, access to which is restricted by DC-ADM 803(VI)(D)(1)(g). (See Declaration of Thomas Riskus attached as Exhibit E to Document # 38 ("Riskus Declaration"), at ¶ 2). Thus, there was, at least, "some evidence" to support Defendant Cross's disciplinary decision. Moreover, Plaintiff cannot show that his placement in the RHU imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). See Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997)(holding that 15 months in administrative custody did not impose an atypical and significant hardship on prisoner); Torres v. Fauver, 252 F.3d 141, 150 (3d Cir. 2002), quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)(a due process claim does not exist if confinement is of a type "that inmates should reasonably anticipate receiving at some point in their incarceration"). As a result, Plaintiff's Fourteenth Amendment due process claim related to Defendant Cross's disciplinary decision and his placement in RHU should be dismissed as a matter of law.

Finally, to the extent Plaintiff is claiming that the DOC's restriction on an inmate's possession of UCC materials violates his due process rights, this claim must also fail. In Beard v. Banks, ___ U.S. ___, 126 S.Ct. 2572 (2006), the Court observed:

> Turner v. Safely, 482 U.S. 78 (1987), and Overton v. Bazzetta, 539 U.S. 126 (2003), contain the basic substantive legal standards governing this case. This Court recognized in Turner that imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment... But at the same time, the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere... As Overton ... pointed out, courts owe 'substantial deference to the professional judgment of prison administrators.' ... And Turner reconciled these principles by holding that restrictive prison regulations are permissible if they are 'reasonably related to legitimate penological interests,' ...

126 S.Ct. 2577-2578.

Here, Defendants have submitted the Declaration of Thomas Riskus, Intelligence Captain at SCI-Forest, who explains that the restriction on UCC materials in DC-ADM 803(VI)(D)(1)(g)

6

is "for purposes of the safety and security of the institution" and "was enacted because inmates had been discovered to be using the UCC to file fraudulent or bogus liens against DOC staff." (Riskus Declaration at ¶ 3). Captain Riskus explains further that "inmates have been purportedly copyrighting their own name, utilizing materials now banned by [DC-ADM 803]," and then "threaten[ing] DOC staff with suit simply based on the staff's use of the inmate's name." (Id.).

From the foregoing, it appears that the restriction on possession of UCC-related materials is designed to serve legitimate penological security concerns and is a matter in which this Court should grant "substantial deference to the professional judgment of prison administrators." Thus, Plaintiff's due process challenge to the DOC's imposition of a restriction on UCC-related materials is without merit and should be dismissed.

### 3. First Amendment Access to Courts Claim

While inmates have the right to adequate, effective, and meaningful access to the courts, Bounds v. Smith, 430 U.S. 817, 828 (1977), the United States Supreme Court restricted who may bring an access to courts claim in Lewis v. Casey, 518 U.S. 343, 355 (1996).[1] The Lewis Court held that, in order to state a claim for a denial of the right of access to the courts, a plaintiff must show actual injury. Id. The plaintiff must show that, as a result of the defendant's actions, he lost the ability to present an "arguably actionable claim" against the validity of his sentence under direct or collateral appeal or a claim challenging his conditions of confinement in a civil rights action. Id. at 356. The Third Circuit has further described the *Lewis* holding:

---

[1]

The Lewis Court opined:

> ...*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Id. at 355.

7

>  to be able to bring a viable claim, the plaintiff inmates ha[ve] to show direct injury to their access to the courts. The Court explained that an inmate could show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or [he could show] that he had suffered arguably actionable harm that he wanted to bring before the courts, but was so stymied by the inadequacies ... that he was unable even to file a complaint.

Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

So, under *Lewis*, this Court must determine whether Plaintiff has shown that he lost the ability to present an "arguably actionable claim." Here, Plaintiff claims that "with [Defendants] being in control of the plaintiff's uniform commercial code legal material, [they] are denying plaintiff access to the courts, in filing the proper motion, so that the plaintiff can become secure in his own person." (Document # 8, Complaint, at p. 9, ¶ 19). In this regard, Plaintiff claims that he has been "denied the chance to do the redemptive process of securing his name so that he can become a real entity instead of the fictitious entity that he is now, with the government having control of his name, and control over his bonds that was taken out on him by the government on his birth certificate and social security card, with the bonds being controlled as a corporation and kept in the Department of the United States Treasury." (Id. at p. 8, ¶ 19). This claim fails to demonstrate that Plaintiff had an "arguably actionable claim" that he lost the ability to pursue due to Defendants' confiscation of his UCC-related materials. As a result, Plaintiff's access to courts claim should be dismissed.

### 4. **Eighth Amemdment Claim**

Plaintiff alleges that his placement in the RHU constituted cruel and unusual punishment in violation of his Eighth Amendment rights. To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994) An objectively, sufficiently serious injury is one that denies

the inmate "the minimal civilized measure of life's necessities," such as food, water, shelter. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 419 (3d Cir. 2000). Under the foregoing standards, Plaintiff's claim that he was placed in RHU, alone, is insufficient to constitute cruel and unusual punishment. See Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981), cert. denied, 462 U.S. 1137 (1983)("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment"). As a result, Plaintiff's Eighth Amendment claim should be dismissed.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion for Summary Judgment [Document # 38] be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights. See e.g., Nara v. Frank, ___ F.3d ___, 2007 WL 1321929 (3d Cir. May 8, 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

Dated: December 13, 2007

cc: The Honorable Sean J. McLaughlin
United States District Judge

9